UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICOLE WADE, AMY DISALVATORE, and DYLAN BARKASY <br> **Plaintiffs** <br><br> v. <br><br> **UNIVERSITY OF CONNECTICUT BOARD OF TRUSTEES** <br> **Defendant** | CIVIL ACTION NO. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PARTIES**

1. Plaintiff, Nicole Wade, lives in New Hartford, Connecticut and is a student at the University of Connecticut, enrolled in the Allied Health Sciences department.

2. Plaintiff, Amy DiSalvatore, on behalf of her minor student and incoming freshman, resides in Manchester, Connecticut.

3. Plaintiff, Dylan Barkasy, is a returning Sophomore at the University of Connecticut and resides in Manchester, Connecticut.

4. The defendant, University of Connecticut Board of Trustees, is legislative board given authority under the University's bylaws to determine the "general policy of the University" and "make laws for its government".

**JURISDICTION**

5. Plaintiffs bring this action under 28 U.S.C. § 2201 and § 2202.

6. At issue is the defendant's policy, enacted on June 4, 2021, stating that "[a]ll

1

UConn students are required to be fully vaccinated against COVID-19."

7. Plaintiffs, through this complaint, assert that defendant's vaccination policy violates federal and state law and the United States Constitution.

## THE UCONN POLICY

8. On June 4, 2021, the defendant enacted a policy mandating that all University of Connecticut students be vaccinated against COVID-19.

9. Per the policy, students who fail to comply face unspecified "loss of privileges and/or sanctions," which can only include the loss of enrollment and attendance at the University.

10. As a reason for the policy, defendant stated the following on the language of the policy itself:

"To promote the health and safety of the University community and to reduce the risk of transmission of COVID-19 among University students, consistent with federal, state and local efforts to minimize outbreaks of COVID-19."

11. Additionally, defendant offers both medical and nonmedical exemptions, subject to the defendant's review and approval[1].

12. No written criteria or specific policy exists as to who qualifies for or what qualifies as a nonmedical exemption, nor is a basis for acceptance or denial of exemptions provided.

---

[1] The defendant's interim president stated that policy "allows students to apply for exemptions, including for medical and other reasons." https://www.courant.com/coronavirus/hc-news-coronavirus-uconn-vaccination-pushback-20210629-knxlyjubgvfw7hh24bk4beo7we-story.html

13. Students therefore must assert a nonmedical exemption by filling out an online form on the defendant's website and await notice of approval or denial.

## UCONN'S POLICY IS NOT "CONSISTENT WITH FEDERAL, STATE AND LOCAL EFFORTS TO MINIMIZE OUTBREAKS OF COVID-19"

14. To date, the federal government has not, nor has any state, mandated COVID-19 vaccination for its citizens.

15. Currently, three vaccines are authorized by the Food and Drug Administration for emergency use only.

16. Under the Emergency Use Authorization statute, 21 U.S.C. § 360bbb-3, any drug authorized for emergency use by the Secretary of Health and Human Services must be administered only after recipients provide their voluntary and informed consent.

17. The HHS Secretary is to ensure:

**(ii)** Appropriate conditions designed to ensure that individuals to whom the product is administered are informed--

**(I)** that the Secretary has authorized the emergency use of the product;

**(II)** of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and
**(III)** of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

18. On March 27, 2020, Amanda Cohn, the Executive Secretary of CDC Advisory Committee on Immunization Practices (CDC-ACIP) specifically stated: "I just wanted to add that, just wanted to remind everybody, that under an Emergency Use Authorization, an EUA, vaccines are not allowed to be

mandatory. So, early in this vaccination phase, individuals will have to be consented and they won't be able to be mandated."[2]

19. The statute precludes mandating of a drug that is authorized for emergency use, as it deals specifically with health and medical consequences, and cannot be interpreted as dealing with sanctions and loss of privileges from school for lack of consent.

20. No federal agency has recommended mandating the vaccine to employees or students.

21. As a reference in federal employment context, "The Safer Federal Workforce Task Force," was created and is led by the White House COVID-19 response team, General Services Administration (GSA), Office of Personnel Management (OPM), and includes members from the Centers for Disease Control and Prevention (CDC), Department of Veteran's Affairs (VA), Federal Emergency Management Agency (FEMA), Office of Management and Budget (OMB) and the United States Secret Service (USSS).

22. The Safer Federal Workforce specifically stated that the vaccine should ***not*** be mandated for federal employees:

---

[2] https://www.thedesertreview.com/health/experimental-covid-shots-cannot-be-mandated/article_89b901ae-8126-11eb-a78d-07c0c7e926df.html

# Vaccinations

**NEW  Vaccination Status**

**Q: Should agencies require employees to be vaccinated or inquire regarding their vaccination status?**

A: The Administration strongly encourages all Americans, including Federal employees and contractors, to be vaccinated. Employees should receive paid time off to be vaccinated and to deal with any side effects. At present, COVID-19 vaccination should generally not be a pre-condition for employees or contractors at executive departments and agencies (agencies) to work in-person in Federal buildings, on Federal lands, and in other settings as required by their job duties.

Federal employees and contractors may voluntarily share information about their vaccination status, but agencies should not require federal employees or contractors to disclose such information. Responding to agency inquiries should be voluntary, and agencies should comply with any applicable laws, including requirements under the Privacy Act and the Paperwork Reduction Act, and any applicable collective bargaining obligations. When an employee or contractor voluntarily discloses that they are unvaccinated or declines to provide vaccination information, agencies should use that information to implement CDC-recommended mitigation measures, including masking and physical distancing.

23. The EEOC defers federal employers to the Safer Federal Workforce Task force and seems to *suggest* that a private employer could potentially mandate the vaccine[3], stating only that the EEO laws in and of themselves do not prevent employers from doing so, yet does not make mention of other federal and/or state laws, such as 21 U.S.C. § 360bbb-3.

---

[3] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws specifically "***The federal EEO laws do not prevent*** an employer from requiring all employees physically entering the workplace be vaccinated for COVID-19…"

24. The CDC encourages individuals who are not vaccinated to get vaccinated[4] but clearly states that the federal government does not mandate the vaccine.



25. The clearest guidance comes directly from the White House, in which President Biden has invited "colleges and universities across the country to join us in our efforts to end the pandemic by signing up for the COVID-19 College Vaccine Challenge."

26. The defendant signed up for the challenge.[5]

27. The College Vaccine Challenge involves a commitment to colleges and universities to take three key actions to get their respective campuses fully vaccinated. The three key actions are: engaging every student, faculty and staff member; organizing their college communities; and delivering vaccine access for all.

28. The challenge in no way encourages a vaccine mandate for students, but instead is geared toward creating programs to encourage the student body, faculty and staff to obtain the vaccine.

29. The defendant's policy requires students to be vaccinated, but defendant does

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html
[5] https://www.whitehouse.gov/COVIDCollegeChallenge/

not require faculty and staff to be vaccinated.

30. The State of Connecticut, in accordance with General Statutes § 10a-155, mandates only that college students be immunized against measles, rubella, mumps, varicella and one dose of Meningococcal.

31. On April 28, 2021, Governor Lamont signed Connecticut House Bill 6423, "An Act Concerning Immunizations," which removes students' ability to claim religious exemptions to vaccinations (with a "grandfather" exception) into law.

32. General Statutes § 19a-131(e) gives statutory authority to the Governor to order the Commissioner of Public Health, during a public health emergency, to vaccinate the citizens of Connecticut, only after obtaining informed consent and subject to specific exemptions.

33. The Governor of Connecticut has not mandated the COVID-19 vaccine for its residents[6].

34. The State of Connecticut Department of Public Health has not mandated any COVID-19 vaccine for Connecticut students who attend schools in Connecticut.

35. Employees of the State of Connecticut are not mandated to be vaccinated against COVID-19.

36. Defendant's employees are not mandated to be vaccinated against COVID-19.

---

[6] https://portal.ct.gov/vaccine-portal/COVID-19-Vaccination-FAQ

## COUNT I
## (14th Amendment Procedural Due Process)

37. Plaintiffs repeat and re-allege paragraphs 1-36 of this Complaint.

38. Plaintiffs have a liberty interest in continuing their education at the University of Connecticut. See *Danso* v. *University of Connecticut*, 50 Conn.Supp. 256 (2007).

39. Plaintiffs are comprised of various students, from those newly accepted to the University (Wade and DiSalvatore), a student who is not eighteen years of age (DiSalvatore), to those who have continued attendance at the University (Barkasy).

40. By failing to obtain a vaccine, students face undetermined "sanctions" or a "loss of privileges," which, without explicitly stating so, can only be interpreted as the loss of their enrollment and continued education at the university.

41. The defendant offers medical and nonmedical exemptions, which it will purportedly approve or deny based on some criteria, which at this point in time has not been published.

42. Defendant has provided no criteria for what constitutes a legitimate "nonmedical" exemption to their vaccine requirement.

43. The policy going into effect on June 4, 2021, ensures that plaintiffs are without practical recourse to apply for admission to another school.

44. Additionally, all four-year public colleges and universities in Connecticut now mandate the vaccine[7].

---

[7] https://ctmirror.org/2021/06/24/cscu-board-votes-to-require-covid-vaccines-for-students-in-the-fall/

45. Plaintiffs are prevented from attending any other public college or university within the state without facing the same vaccination requirement.

## COUNT II
### (14th Amendment Substantive Due Process)

46. Plaintiffs repeat and re-allege paragraphs 1-45 of this Complaint.

47. Plaintiffs have an individual, fundamental right to refuse medical treatment. *Washington* v. *Harper,* 494 U.S. 210 (1990). See also *Cruzan* v. *Director of Mississippi Department of Public Health*, 497 U.S. 261 (1990).

48. While there is significant precedent to States mandating vaccinations in public health emergencies, primarily *Jacobson* v. *Massachusetts,* 197 U.S. 11 (1905), not only has the State of Connecticut not mandated the vaccine for students, but Connecticut's governor, who currently has authority under the provisions of Section 19a-131(e) to order the Commissioner of Public Health to vaccinate the citizens of Connecticut in a public health emergency, has not done so.

49. *Jacobson* does not apply to defendant's policy for the following reasons:

    a. The defendant has no statutory authority to order the vaccination of its students, as the vaccination requirements are a matter of state statute and only the Governor can order vaccination in a public health emergency, and therefore defendant, by enacting their mandate, exceeded their statutory authority under General Statutes § 10a-104;

    b. The Governor of Connecticut, who *has* statutory authority, in an emergency, to order the Commissioner of Public Health to vaccinate

9

  citizens in certain towns (similar to the authority given the Cambridge Board of Health in *Jacobson*), has not done so;

 c. The Supreme Court in *Jacobson* made its determination based significantly on the settled medical science regarding the smallpox vaccinations from "nearly a century" of its use, and here we are dealing with a drug that has been in existence less than one year and is not even approved by the Food and Drug Administration;

 d. In *Jacobson,* the determination as to the necessity of a vaccine, as opposed to other methods of prevention, was delegated to a governmental body (local Board of Health) as it is in Connecticut: the Public Health Commissioner on auhtority from the Governor.

50. Thus, strict scrutiny applies to defendant's decision, meaning their restrictions must be narrowly tailored to serve a compelling state interest.

51. Restricting plaintiffs' fundamental right to refuse medical treatment in this instance was not narrowly tailored, nor does it serve a compelling interest.

52. The vaccines mandated by the defendant, in their short existence, have resulted in nearly 7,000 vaccine-related deaths (https://www.openvaers.com/covid-data/mortality) as opposed to vaccine-related deaths in 2019 totaling only 605.

# COVID Vaccine Data

Through June 25, 2021



Reported Deaths post COVID Vaccine: Total 6,985

53. Among the ages of 12-24, which make up 8.8% of vaccines administered, we see a whopping 52.5% of *all* reported myocarditis and pericarditis cases[8].

54. As of February, 2021, the total amount of COVID-19 deaths of those under forty-four years old was 11,421, while those under twenty-five totaled only 3,710[9].

55. Specific to Connecticut, a total of 54,873 cases have been confirmed in the state for the 20-29 age group, resulting in a total of 10 deaths[10].

56. As of July 3, 2021, the State of Connecticut had only 356 active cases of

---

[8] https://www.fda.gov/media/150054/download#page=17
[9] https://www.heritage.org/data-visualizations/public-health/covid-19-deaths-by-age/
[10] https://data.ct.gov/Health-and-Human-Services/COVID-19-Cases-and-Deaths-by-Age-Group/ypz6-8qyf

11

COVID-19[11].

57. As of May 5, 2021, there were two positive cases out of 1,500 students in defendant's residences of Storrs, Connecticut[12].

58. The same data reflects that 160 positive test results have come from defendant's faculty and staff.

59. Since 2020, the defendant has received at least $110.5 Million from Coronavirus-related relief programs such as the American Rescue Plan Act ($56.9 million), Response and Relief Act ($32.1 million) and the CARES Act ($21.5 million)[13].

60. Many of these funds received have vague guidelines with respect to use of the funds, such as training, public health centers, staffing and reimbursement of lost revenue[14].

61. The Family Freedom Endeavor, Inc., submitted a FOIA request for defendant to produce records related to the use of said funds in connection with the determination to mandate the vaccines for defendant's students for the Fall semester of 2021.

62. This request was submitted on June 22, 2021 and to date no records have been produced.

63. Defendant, along with administering testing and vaccines on its campus,

---

[11] https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days
[12] https://coviddashboard.uconn.edu/covid-dashboard/
[13] https://www.covidmoneytracker.org
[14] https://crsreports.congress.gov/product/pdf/IN/IN11556

reports its data to the CDC, including specific demographic data[15].

64. Defendant also mandates certain prevention measures for those with exemptions, including mask wearing, temperature checks and self-reporting.

65. These methods of prevention were purportedly effective in preventing the spread of COVID-19 and must still be so.

66. Defendant's policy, in light of the publicly available data, additional effective measures, the disproportional rate of infection from the faculty and staff compared to the student body and an already highly vaccinated student body (defendant's spokesperson stated that the "vast majority" of UConn students were willing to be vaccinated[16]), fails to establish a rational relationship to a legitimate interest, which is preventing the spread of COVID-19.

67. Defendant's policy is also unconstitutionally vague.

## COUNT III
**(Lack of Informed Consent)**

68. Plaintiffs repeat and re-allege paragraphs 1-67 of this Complaint.

69. As stated in ¶19, 21 U.S.C. § 360bbb-3 provides that vaccines authorized for emergency use are not to be mandated but require informed consent.

70. Section 19a-131e provides the statutory authority vaccinate the citizens of Connecticut by authorizing the Governor to order the Commissioner of Public

---

[15] https://www.cdc.gov/coronavirus/2019-ncov/lab/reporting-lab-data.html
[16] https://www.stamfordadvocate.com/news/article/Families-threaten-to-sue-UConn-over-COVID-vaccine-16283806.php

Health to do so in a declared public health emergency. Section 19a-131e states in part:

> The commissioner shall inform individuals subject to such vaccination order of the benefits and risks of the vaccine and an individual's option to refuse to be vaccinated for any reason, including, but not limited to, health, religious or conscientious objections. ***No individual shall be vaccinated unless such individual or, if such individual is a minor, such individual's parent or guardian has provided written consent for such vaccination.***

71. These federal and state statutes, although they may not specifically grant a private right of action, specifically outline the need for consent prior to administration of vaccines.

72. Section 19a-131e does not provide even the Governor to order the vaccination of Connecticut residents with a drug that has not been approved by the Food and Drug Administration.

73. The defendant does not have authority under the laws of the State of Connecticut, the Connecticut Constitution, federal law or the United States Constitution, to mandate that its students be vaccinated with one of three unapproved vaccines.

74. Defendant's statutory authority under Section 10a-104 does not give it more authority than the governor and legislature.

75. Defendant's mandate therefore violates both state and federal law and exceeds its authority.

## COUNT IV
### (Violations of 42 U.S.C. §1983)

76. Plaintiffs repeat and re-allege paragraphs 1-75 of this Complaint.

77. Defendant, by enacting their vaccine mandate, was acting under the color of law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West* v. *Atkins*, 487 U.S. 42 (1988).

78. The deprivation of plaintiffs' liberty interest, outlined in Count I, above, constitutes a violation of §1983.

79. The deprivation of plaintiff's fundamental right to refuse medical treatment, outlined in Count II, above, constitutes a violation of §1983.

WHEREFORE, plaintiffs request:

80. Declaration that defendant's mandate is unconstitutional on its face;

81. Declaration that defendant's mandate is unconstitutional as applied to both plaintiffs;

82. Enjoin defendant from enforcing their mandate;

83. Attorney fees and costs, plus any other relief this Court deems proper.

Plaintiffs, by their attorney,

  /s/ Ryan P. McLane
Ryan P. McLane, Esq. (Juris: 438176)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com