UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICOLE WADE, AMY DISALVATORE, and DYLAN BARKASY <br> **Plaintiffs** <br><br> v. <br><br> UNIVERSITY OF CONNECTICUT BOARD OF TRUSTEES and ANDREW AGWUNOBI, <br> **Defendants** | NO.  3:21-cv-924-JAM |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff filed a complaint seeking injunctive relief from the defendants' unlawful policy, mandating that the students of the University of Connecticut take an unapproved COVID-19 vaccine. The policy provided for medical or "nonmedical" exemptions and would subject the students who did not take the vaccine to "sanctions". To date, nonmedical exemption has not been defined. The students had to sue the defendants in order to obtain some form of an explanation in the form of a Declaration from the Dean of Students and Associate Vice President of Student Affairs, which provides virtually no elaboration on what a nonmedical exemption is, or how a student is accepted or denied after applying for one. Defendant Board of Trustees moved to dismiss the action based on Eleventh Amendment lack of jurisdiction and based on lack of standing. Plaintiffs oppose their motion, and the case should proceed.

Plaintiffs are not claiming that general, mandatory vaccinations are violative of their Fourteenth Amendment rights. Plaintiffs are, however, claiming that

1

imposing a mandatory vaccination of these specific COVID-19 vaccinations, which have not been approved by the Food and Drug Administration, have not been mandated by the Commissioner of Public Health, are not required to attend school as a matter of law within the State of Connecticut, and have not been mandated by the Governor under his emergency authority, are in fact unlawful and violative of the students' rights under the Fourteenth Amendment.

## I. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE ELEVENTH AMENDMENT

Defendant Board of Trustees initially raised the issue of Eleventh Amendment standing, stating that a plaintiff can overcome the Eleventh Amendment issue of standing if: "Congress has abrogated the state's immunity; (2) the state has voluntarily waived its immunity; or (3) the suit falls within *Ex Parte Young* because it seeks prospective injunctive relief against state officials in their individual capacities for ongoing violations of federal law," citing *In Re Deposit Insurance Agency*, 482 F.3d 612 (2007). Plaintiffs have since filed an amended complaint, as a matter of course under Fed. R. Civ. P. 15(a) (and would otherwise be allowed under Fed. R. Civ. P. 21), naming the University President, Andrew Agwunobi, in his official capacity, for ongoing violations of federal law, with no change to the claims within plaintiffs' complaints. Similar to *Ex Parte Young*, 28 S. Ct. 441 (1908), where plaintiffs sued the Minnesota Attorney General for enforcing an unlawful statute passed by the legislature which restricted the amounts that railroad companies could charge, plaintiffs here added Andrew Agwunobi, the University's Chief

Executive Officer, in charge of enforcing the Board of Trustees' policies, to their suit. Due to the ongoing violations of federal law claimed by the defendants, the fact that plaintiffs are entitled as a matter of course to amend their complaint under Fed. R. Civ. P. 15(a) and adding Defendant Agwunobi will have little to no effect on the pace of this litigation, the Eleventh Amendment will not affect the plaintiffs' claims moving forward, as their First Amended Complaint cures any deficiencies with respect to Eleventh Amendment standing.

## II. PLAINTIFFS HAVE STANDING

Plaintiffs have standing to bring this action. Defendants assertion is that plaintiffs DiSalvatore and Barkasy no longer have standing because they were granted an exemption, and that plaintiff Wade does not have standing because she never availed herself of a "nonmedical" exemption, which has not been defined and whose acceptance criteria has not been explained, even in the Declaration of Eleanor Daugherty, which accompanied defendant's Motion to Dismiss.

### A. Plaintiffs DiSalvatore and Barkasy Maintain Standing Regardless of Their Exemptions Due to the Arbitrariness and Vagueness of the Mandate, along with the Lack of Permanency or Timeframe Contained Within the Policy.

Defendants assert that because DiSalvatore and Barkasy obtained "nonmedical" exemptions from the University's Associate Vice President of Student Affairs, that they now lack standing. This is not the case. First, it is inaccurate that Ms. Daugherty granted these exemptions "extremely frequently," as she granted roughly 65% of all applications. Second, she states that she reviews each application to determine "(a) whether the student is enrolled; (b) whether the student will be

3

living on-campus in a residence hall; (c) whether the student genuinely wants or needs an exemption (e.g., an international student mistakenly believes that because he/she has not yet been vaccinated he/she must request an exemption – Uconn would vaccinate such students upon arrival on campus so no exemption would be necessary); and (d) the potential impact on the health and safety of the requesting student's campus cohort, such as his/her residence hall." (Decl. of Eleanor Daugherty, ECF 16, Exhibit A ¶7).

Ms. Daugherty's declaration carries with it a number of issues, which only bolster plaintiffs' claims that the UConn policy is unconstitutionally vague. First, plaintiffs had to sue the Board of Trustees to even discover the University's (through Ms. Daugherty) criteria for acceptance or denial. Second, she uses an example of an international student who mistakenly believes that he/she can't get vaccinated but failed to state how many of the 267 denials followed that scenario (it's doubtful many did). What this amounts to is a state university, through its President, mandating a vaccine that is not approved by the FDA, subject to a nonmedical exemption that has no definition, the qualification of which depends on whether the Associate Vice President of Student Affairs determines whether a student "genuinely wants or needs an exemption." This is simply unconstitutional on its face. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

*Grayned* v. *Rockford*, 408 U.S. 104 (1972).

As for standing, defendant cannot say with certainty that plaintiffs DiSalvatore and Barkasy "have not, and will not, suffer the alleged injury that they complain of." There is no end date on this vaccine mandate, or the plaintiffs' exemption status. There is nothing to suggest that the Board will remove the nonmedical exemption upon pending FDA approval of the various vaccines. And frankly, based on the pattern of unilateral actions thus far, there is nothing to suggest that the policy be changed immediately. On June 3, 2021, incoming students were not going to be mandated to take the COVID-19 vaccine. On June 4, 2021, they were. This disease has brought with it rapidly changing guidance, regulation and mandates. This is exactly the scenario that Justice Gorsuch was referring to in *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63 (2020):

"That leaves my colleagues to their second line of argument. Maybe precedent does not support the Governor's actions. Maybe those actions do violate the Constitution. But, they say, we should stay our hand all the same. Even if the churches and synagogues before us have been subject to unconstitutional restrictions for months, it is no matter because, just the other day, the Governor changed his color code for Brooklyn and Queens where the plaintiffs are located. Now those regions are "yellow zones" and the challenged restrictions on worship associated with "orange" and "red zones" do not apply. So, the reasoning goes, we should send the plaintiffs home with an invitation to return later if need be. ***To my mind, this reply only advances the case for intervention***. It has taken weeks for the plaintiffs to work their way through the judicial system and bring their case to us. During all this time, they were subject to unconstitutional restrictions. Now, just as this Court was preparing to act on their applications, the Governor loosened his restrictions, all while continuing to assert the power to tighten them again anytime as conditions warrant. So if we dismissed this case, nothing would prevent the Governor from reinstating the challenged restrictions tomorrow. And by the time a new challenge might work its way to us, he could just change them again. The Governor has fought this case at every step of the way. To turn away religious leaders bringing meritorious claims just because the Governor decided to hit the "off" switch in the

5

shadow of our review would be, in my view, just another sacrifice of fundamental rights in the name of judicial modesty. *Id* (emphasis added).

This approach to addressing the issue in front of the plaintiffs instead of engaging in a constant back and forth between changing policies where standing is imminent and then it seems to go away, the Court found that the issue was not moot, and that the plaintiffs still faced "imminent harm". *Id*. Further, "[a] law may be unconstitutionally void for vagueness if it is "so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application," *Roberts* v. *U.S. Jaycees,* 468 U.S. 609, (1984). It is no different here. The policy is arbitrary and vague, and subject to the whims of the Board of Trustees, the President and his designee, and the issue should be addressed for these plaintiffs, despite their current and potentially temporary exemption status.

**B. Plaintiff Wade Has Standing Due in that She Cannot be Forced to Avail Herself of a Policy that has Not Been Defined, nor has Any Criteria Been Established as to Whether She Would Qualify.**

As stated in the prior section, plaintiff Wade cannot be expected to avail herself of an exemption that has no definition, no information as to who does or does not qualify, and no criteria for acceptance or denial. The cases cited by defendants, such as *Freedom from Religion Foundation., Inc.* v. *Lew*, 773 F.3d. 815, 821 (7th Cir. 2014), deal with actual, legitimate policy exemptions. For instance, in *Lew*, the plaintiff failed to withhold taxes and claim an exemption with the IRS. The claim here is not that Ms. Wade was denied an exemption, but that the policy in and of itself is unconstitutional, *including* the exemption provision, which has essentially no meaning. In other words, at issue in the cases cited was not the exemption

6

process or provision, but rather that the plaintiffs did not avail themselves to a valid exemption process, or they were not included within the affected group and suffered no injury (such as school busing not being authorized by statute, therefore failure to continue busing did not grant plaintiff standing. *Pucket* v. *Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151 (8th Cir. 2008)).

Defendants' argument that a plaintiff has to submit to an unlawful and unconstitutionally vague policy, including an exemption process that they cannot define, before claiming standing, is not supported by the cases cited in their Motion. Defendants do not get to avoid liability by failing to define a policy exemption, who qualifies for the exemption, or what the criteria is for acceptance or denial, then subsequently turn around and demand that a student should have availed him or herself to the exemption that they haven't explained. Also, we now know that the entire process was left to the subjective determinations of defendants' Vice President of Academic Affairs, for on-campus residents who "genuinely need or want" an exemption, and the "potential impact on the health and safety of the requesting student's campus cohort, such as his/her residence hall," none of which themselves have actually been defined. We have in front of us an actual state policy that allows someone to opt-out of taking an unapproved vaccine if a state official decides, based on her own determination, that the student "genuinely wants or needs" an exemption. The fact that Wade did not participate in this unconstitutional process does not eliminate her standing: it bolsters her claims.

### III. CONCLUSION

Based on the plaintiffs curing any issues with their First Amended Complaint, the Eleventh Amendment does not bar hearing the issue, nor, based on the aforementioned reasons, do the plaintiffs lack standing to bring this lawsuit. For these reasons, plaintiffs request This Court DENY defendant's Motion to Dismiss.

Plaintiffs, by their attorney,

　/s/ Ryan P. McLane　
Ryan P. McLane, Esq. (Juris: 438176)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com

### CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on this 5th day of August 2021, I caused the foregoing to be served in this matter by electronic mail to:

**Mary Lenehan, Esq.**
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
Mary.lenehan@ct.gov

　/s/ Ryan P. McLane　
Ryan P. McLane, Esq. (BBO: 697464)