**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NICOLE WADE ET AL., | : | No. 3:21-cv-00924-JAM |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT | : | |
| BOARD OF TRUSTEES, | : | |
| *Defendant*. | : | AUGUST 10, 2021 |

## MOTION TO PRECLUDE EXERT EVIDENCE

In support of their motion for a preliminary injunction (Doc. 2), the Plaintiffs submitted an affidavit from purported exert witness Dr. Peter McCullough (Doc. 22-4), in which Dr. McCullough offers his opinions about the efficacy of the COVID-19 vaccines, i.e., their safety, effectiveness, and necessity.  The Defendants, the University of Connecticut Board of Trustees and President Andrew Agwunobi (collectively, "UConn"),[1] respectfully move to exclude that affidavit.

First, Dr. McCullough's affidavit contains what are potentially false statements about his professional affiliations, which are the subject of a pending lawsuit and application for a temporary restraining order.  Second, Dr. McCullough's opinions are mere disputes about public health policy and, as such, are irrelevant.

## I.    DR. MCCULLOUGH'S AFFIDAVIT CONTAINS FALSE STATEMENTS ABOUT HIS QUALIFICATIONS

In Paragraph 2 of his affidavit, Dr. McCullough attests:  "I am on the medical staff at Baylor University Medical Center and Baylor Jack and Jane Hamilton Heart and Vascular

---

[1]The Plaintiffs added UConn President Agwunobi as a defendant in their Amended Complaint.  Doc. 19.

Hospital, in Dallas, Texas. I am also on staff at Baylor Heart and Vascular Institute, which promotes cardiovascular research and education."

This statement, however, is evidently false, as Dr. McCullough not only is not an employee of those entities (and has not been since February, 2021), but is contractually prohibited from holding himself out as one, as he has done here. Baylor Scott & White Health ("BSWH") and the HealthTexas Provider Network have filed a lawsuit against Dr. McCullough in Texas state court, alleging that for the past several months he has been falsely holding himself out as being professionally affiliated with BSWH's subsidiary entities. The plaintiffs have moved for a temporary restraining order, which is set for a hearing today, August 10, 2021. See TRO Mtn. (attached hereto as Exhibit A).

As support for their motion, the plaintiffs cite Dr. McCullough's separation agreement with BSWH, paragraph 1 of which provides in relevant part that Dr. McCullough "shall no longer . . . hold himself out (in publications or otherwise) as affiliated with . . . any entity owned, operated or controlled by [BSWH], including, without limitation, Baylor University Medical Center ('BUMC') . . . Baylor Heart and Vascular Institute ('BHVI') . . . Baylor Jack and Jane Hamilton Heart and Vascular Hospital ('BHVH') . . . except that nothing herein shall preclude [Dr. McCullough] from being a member of the medical staff at BUMC or BHVH." Exhibit A, p. 2. In the present case, by holding himself out in Paragraph 2 of his affidavit as being "on the medical staff" and "on staff" at these entities, Dr. McCullough appears to have again misrepresented his professional affiliations in violation of this provision of his separation agreement.

In UConn's view, these potential misstatements affect not only the credibility of Dr. McCullough's opinions, but their admissibly. First, by misstating certain of his underlying

qualifications, the admissibility of his ultimate opinions, which is dependent upon those qualifications, is necessarily also affected.  Second, if the Texas court grants the plaintiffs' request for a temporary restraining order, Dr. McCullough will be prohibited from holding himself out as an affiliate of BSWH entities, including through an affidavit in this lawsuit.  UConn cannot consent to the admission of his affidavit if it would violate a court order.

## II.   DR. MCCULLOUGH'S OPINIONS ARE ULTIMATLEY DISPUTES ABOUT PUBLIC HEALTH POLICY AND, THUS, IRRELEVANT

Dr. McCullough's opinions all boil down to a single proposition:  that COVID-19 vaccines do more harm than good.  He makes three main points.  First, that the vaccines are not effective in preventing people from contracting COVID-19. McCullough Aff., ¶¶ 29-32, 61-65. Second, that they can be harmful to those who receive them.  Id., ¶¶ 24-28, 33-60.  Third, that vaccine mandates are not necessary because herd immunity has already been achieved, alternative treatments exist, and college-aged students are unlikely to spread the virus or develop severe symptoms from it.  Id., ¶¶ 11-23.

These opinions run contrary to prevailing scientific consensus.  The United States Centers for Disease Control and Prevention ("CDC") has indicated that the vaccines are safe and highly effective, that the more people who receive them the better, and that more than 346 million doses of COVID-19 vaccines have been administered in the United States without any demonstrated severe health risks.  See Doc. 17, p. 44-45 (Daugherty Aff.) ¶¶ 8-9.[2]  UConn relied on this prevailing consensus in formulating its vaccination policy.  Id.

Dr. McCullough disagrees with these assessments.  Although he is entitled to his opinions, those opinions are not evidence of anything except that there are certain individuals in

---

[2]See also e.g. https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html.

the medical profession (him included) who question or disagree with the prevailing view that the COVID-19 vaccines are safe and effective.  As UConn explained in its opposition to the Plaintiffs' motion for preliminary injunction, see Doc. 17 pp. 19-22, such evidence simply has no bearing on the Plaintiffs' constitutional challenges to UConn's vaccination policy, and, therefore, are not relevant.

The Supreme Court held as much in Jacobson v. Massachusetts, 197 U.S. 11 (1905). There the Court concluded that the defendant's offers of expert testimony about the ineffectiveness and harms of smallpox vaccines had no bearing on his challenge to Massachusetts' vaccination law because the state's decision to adopt the opposite view of the science, which recognized that the vaccines were safe and effective, was a policy choice that courts cannot second-guess.  See id., 30-31 (discussing Jacobson's offer of proof from "medical profession[als] who attach little or no value to vaccination as a means of preventing the spread of smallpox, or who think that vaccination causes other diseases of the body"; explaining that policymakers were "not unaware of these opposing theories, and was compelled of necessity to choose between them"; and holding that it is "no part the function of a court . . . to determine which one of two modes was likely to be the most effective for the protection of the public").

Thus, even if the Court were to credit Dr. McCullough's opinions over those of UConn and the CDC about whether existing information about the COVID-vaccines sufficiently demonstrates that their benefits outweigh their risks, it would not matter.  The decision about which view of the data was most reliable was UConn's to make.  See Conn. Gen. Stat. § 10a-104 (a) (1).  UConn was not unaware of the anti-vaccine arguments, and decided to reject them. Courts are not final arbiters over disputes about science.  Accordingly, the fact that a single doctor (or several of them) hold dissenting views on these matters simply has no legal relevance.

See Phillips v. City of New York, 775 F. 3d 538, 542 (2d Cir. 2015); see also Doe v. Zucker, No. 1:20-cv-840 (BKS/CFH), 2021 U.S. Dist. LEXIS 28937, at *65-66 (N.D.N.Y. Feb. 17, 2021) (collecting cases).  If anything, the presence of scientific disagreement or uncertainty requires more, not less, deference to UConn's decision to side with the CDC.  See Marshall v. United States, 414 U.S. 417, 427 (1974) (noting that "medical uncertainties afford little basis for judicial responses," and that when officials "undertake[] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad").

Accordingly, Dr. McCullough's opinions have no bearing on the issues before the Court.[3] As such, they are not relevant under Fed. R. Evid. 702.  See Daubert v. Merrel Dow Pharms., Inc., 509 U.S. 579, 597 (1993)  ("[r]ules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.").  His affidavit should be excluded.

---

[3]Dr. McCullough filed a similar affidavit in support of a legal challenge to Indiana University's COVID-19 vaccination mandates in Klassen v. Trs. Of Ind. Univ. (N.D. In.), Docket No. 1:21-CV-238.  See Doc. 31-18 (McCullough declaration).  The District Court, in addition to rejecting Dr. McCullough's opinions for reasons that are equally applicable in the present case (and that UConn will address at the injunction hearing), noted the irrelevance of Dr. McCullough's "competing views on the risks of [COVID-19] and the vaccines" because "[t]his is precisely the debate of medical professionals that state policymakers . . . are best suited to resolve . . . ."  Klaassen v. Trs. of Ind. Univ., No. 1:21-CV-238 DRL, 2021 U.S. Dist. LEXIS 133300, at *78-79 (N.D. Ind. July 18, 2021), req. for injunction pending appeal denied, 2021 U.S. App. LEXIS 22785, at *2 (7th Cir. Aug. 2, 2021).

DEFENDANT,
UNIVERSITY OF CONNECTICUT
BOARD OF TRUSTEES

WILLIAM TONG
ATTORNEY GENERAL

BY:  /s/ Timothy J. Holzman
Timothy J. Holzman (ct30420)
Mary Lenehan (ct15436)
Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel.: (860) 808-5210
Fax: (860) 808-5385
Timothy.Holzman@ct.gov
Mary.Lenehan@ct.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2021, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Tim Holzman*

Assistant Attorney General