UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICOLE WADE, AMY DISALVATORE, ) <br> and DYLAN BARKASY ) <br> **Plaintiffs** ) <br> ) <br> v. ) <br> ) <br> UNIVERSITY OF CONNECTICUT ) <br> BOARD OF TRUSTEES and ) <br> ANDREW AGWUNOBI, ) <br> **Defendants** ) | NO. 3:21-cv-924-JAM |

### PLAINTIFFS' SUPPLEMENTAL BRIEF

Following oral argument on Plaintiffs' Motion for Preliminary Injunction, parties were instructed to submit supplemental briefs regarding *Libertarian Party of Eerie County* v. *Cuomo*, 970 F.3d 106 (2020), and its applicability to the issues addressed at the hearing held on August 12, 2021. The two corresponding issues to address, analyze and distinguish are standing and vagueness. Plaintiffs' assertion as to the merits of their argument as to these issues is further cemented after reviewing *Libertarian Party*.

    I.    STANDING AS TO BARKASY AND DISALVATORE

Plaintiffs Dylan Barkasy and Amy DiSalvatore both had their "non-medical" exemptions accepted by Eleanor Daugherty as of July 23, 2021. There is no specified time period for how long that exemption will be effective. Further, defendants have already stated that due to the changing climate of the COVID-19 virus, the term of the exemption needed to be broad out of necessity, and that their policies regarding the vaccine could change, including with respect to faculty. At hearing, defendants

1

confirmed that there was no specific end date or criteria, then stated only that the exemption was just "an exemption from the policy" (without the transcript, it was stated to that effect). Plaintiffs argued that Barkasy and DiSalvatore still have standing based upon the principles in *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S.Ct. 63 (2020), that because the policy is subject to change based on the whims of the defendants and/or their vice president of student affairs, plaintiffs could easily be deprived of their rights before they were able to obtain injunctive relief if their exemption were subsequently revoked based on the defendants' admissions of constant possibilities of new policies due to the changing situations concerning the virus.

This situation is easily distinguishable from *Libertarian Party*'s plaintiff Mayor, who was awarded a firearms license, which is not an exemption, but part of a licensing scheme which been in existence for over 100 years, stated that he was in fear of losing his license with no basis for such a claim. This is simply because there were specific guidelines for licensure and specific guidelines for disqualification or loss of license (for instance, in the same case, plaintiff Mongielo temporarily lost his license because he had been arrested, but later had it reinstated). In other words, this was his privilege to lose, for the specified length of time that the license was in effect until time for renewal, which is three years[1]. This can easily be contrasted to the current case, where no criteria was provided for acceptance, denial, or even length of time that the vaccination exemption would last, differing from a licensure

---

[1] https://licensing.nypdonline.org/new-app-instruction/

scenario. Additionally, plaintiffs here had to assert for an exemption to a policy in order to exercise their fundamental right to refuse medical treatment, one which they had already been enjoying, free from restraint, and plaintiffs in *Libertarian Party* were able to continue to exercise their Second Amendment rights, subject to longstanding licensing restrictions and specific disqualification criteria. Thus, their "fear" of loss of their right in *Libertarian Party* was unfounded because the right was theirs to lose based on specific and obvious criteria (ex: getting arrested). Here, Barkasy and Disalvatore (her son's) rights have already been infringed upon, and they had to assert an exemption to exercise it, with no criteria for how long this exemption will last, with the defendants clearly establishing that they hold the cards in their hand to change policies at a moment's notice, not subject to longstanding restrictions, but based on a whim.

## II. STANDING AS TO WADE

Very similar to the way that this case was distinguished from *Jacobson* v. *Commonwealth*, 197 U.S. 11 (1905), in that *Jacobson* dealt with over 100 years of common and medical knowledge surrounding smallpox vaccines, and our case deals with unsettled science and no common knowledge of the COVID-19 vaccines, the plaintiffs in *Libertarian Party* were subject to a licensing regime that had used the particular terms that plaintiffs asserted were vague for over 100 years, whereas we are dealing with policy language that has been in existence for less than two months. Submitting to a licensing scheme that had been used for over a century, contrasted with Ms. Wade, who was provided less than two months to submit to an

undefined, unspecified "non-medical" exemption to the policy which has no end date nor meaningful criteria for acceptance nor denial (which has now changed to "case by case"), should not be compared to firearms licensing procedures and the failure of various plaintiffs in *Libertarian Party* to even apply for a firearms license. Additionally, plaintiffs in *Libertarian Party* were not facing the loss of their Second Amendment rights. They weren't exercising them and continued not exercising them by not applying for a license. Ms. Wade's right to refuse medical treatment *is* being infringed, and she is not required to subject herself to an undefined procedure to obtain an exemption that can be taken away at a moment's notice in order to establish standing.

### III.   VAGUENESS OF THE POLICY

*Libertarian Party* also dealt with the issue of vagueness, as the plaintiffs asserted that phrases such "good moral character" and "no good cause" were unconstitutionally vague. The Court rightfully found that there are many examples of what would be violative of a "good moral character" standard, and that this scheme had been in place in New York for over 100 years. Additionally, the licensing authorities were judges, and the procedures for review were court hearings in front of these judges. Phrases like "good cause" have been used as legal terminology, and still are (Fed. R. Civ. P. 35 is just one example). Further, these judges were able to thoughtfully analyze a person's criminal and mental health background (ex: denying the license for a plaintiff with fifty arrests on his criminal record). "Good moral character" and "proper cause" are general terms, but have a

4

history of applicability in firearms licensing, with examples from many years of licensing authorities applying these standards, along with those enumerated exclusions outlined in *District of Columbia* v. *Heller* 554 U.S. 570 (2008). This is easily distinguished from our instant case. Even if we were to compare UConn's vice president of student affairs to the role of licensing commissioner, her procedure of determining exemptions based on "genuine want or need" of a "non-medical" exemption is so extremely vague that ordinary people cannot determine the meaning (it still has not been defined by defendants[2]). Plaintiffs are not asking for the "meticulous specificity" described in *Libertarian Party*. Quite simply, the policy has no meaning at all, nor can the criteria for acceptance (a student's "genuine want or need") be understood by those applying.

IV.   **CONCLUSION**

For the foregoing reasons, the *Libertarian Party* case, provided at oral argument, does not change the plaintiffs' position, nor does it provide any authority to dismiss plaintiffs' claims based on standing and only serves to strengthen their assertion that defendants' policy is unconstitutionally vague.

---

[2] Although they point to the fact that Ms. Daugherty has granted 504 exemptions and has stated that approximately 267 have not yet been granted (no reason is provided as to why), this does not mean that this exemption process is constitutional on its face. The fact that Ms. Daughtery is choosing to allow what she wants to allow does not change the fact that the policy and its criteria for acceptance are unconstitutionally vague.

Plaintiffs, by their attorney,

  /s/ Ryan P. McLane
Ryan P. McLane, Esq. (Juris: 438176)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com