UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICOLE WADE, AMY DISALVATORE, and DYLAN BARKASY,<br>    *Plaintiffs*,<br><br>    v.<br><br>UNIVERSITY OF CONNECTICUT BOARD OF TRUSTEES and ANDREW AGWUNOBI,<br>    *Defendants*. | No. 3:21-cv-924 (JAM) |

**ORDER DISMISSING ACTION FOR LACK OF FEDERAL JURISDICTION**

The University of Connecticut ("UConn") is one of hundreds of institutions of higher education across the United States that have decided that their students must be vaccinated against the potentially lethal COVID-19 virus if they wish to pursue their studies on campus this Fall. UConn's policy requires students to report that they have been vaccinated or to apply for and be granted an exemption from the vaccination requirement.

The plaintiffs in this action are two UConn students and the parent of a third UConn student. They believe that it is unethical and unconstitutional for UConn—a public university acting on behalf of the State of Connecticut—to require them or their child to be injected with a vaccine as the price of continuing academic studies at UConn. They say that the policy is unnecessary because most students are already vaccinated and because young students are not particularly vulnerable to COVID-19. They say that the policy is irrational because UConn has declined to impose the same mandatory vaccination requirement on its older and more vulnerable faculty and staff. And they say that the policy is dangerous because the vaccines have known and unknown side effects and have yet to be approved except for extraordinary emergency use by the U.S. Food and Drug Administration.

1

The plaintiffs raise important constitutional questions. Why and when should the government have the right to condition access to public education on a student's sacrifice of his or her right against unwanted medical treatment in the form of a highly invasive injection of a yet-to-be fully approved vaccine?

But the plaintiffs' challenge also raises vital concerns about the constitutional limits on power entrusted to federal courts. As a threshold matter of jurisdiction, a federal court may resolve a plaintiff's claim that the government is violating the Constitution only if it is clear that a plaintiff has an actual or imminent injury that is fairly traceable to the government's action and is redressable by a court order of relief.

That is not this case. Two of the three plaintiffs have applied for and received exemptions from the UConn vaccination requirement. Having received exemptions, their claims are moot because they are unlikely to face any continuing injury from the vaccination requirement. The third plaintiff has declined even to seek an exemption. Having failed to avail herself of a simple process that may allow her to avoid the vaccination requirement, she has not suffered an injury that the law recognizes as the basis for a right to complain in federal court. Accordingly, the Constitution requires me to dismiss this action for lack of federal jurisdiction.

## BACKGROUND

The plaintiffs in this case are two UConn students and the parent of a third UConn student.[1] Plaintiff Nicole Wade is an undergraduate sophomore transfer student who has been accepted into UConn's Allied Health Science department.[2] Plaintiff Amy DiSalvatore is the parent of a minor child who will be an incoming freshman at UConn's School of Engineering.[3]

---

[1] Doc. #19 at 2 (¶¶ 1-3) (amended complaint).

[2] Doc. #22-1 (¶ 2) (Declaration of Nicole Wade).

[3] Doc. #22-2 (¶¶ 2-3) (Declaration of Amy DiSalvatore).

Plaintiff Dylan Barkasy is a sophomore commuter student who plans to major in Civil Engineering.[4]

The defendants in this case are the UConn Board of Trustees and UConn President Andrew Agwunobi.[5] The Board of Trustees has authority to determine the general policies at UConn, and President Agwunobi has authority to carry out and enforce policies adopted by the Board of Trustees.[6]

UConn is Connecticut's flagship state university.[7] The University has five campuses—in Storrs, Stamford, Avery Point, Hartford, and Waterbury—with residential housing for more than 12,500 students at the Storrs and Stamford locations.[8] Most residence halls require students to share close living quarters with up to 40 other students, including sharing restrooms, kitchens, common areas, and laundry facilities.[9] The main campus in Storrs provides dining services to more than 10,000 students, and students at dining halls eat in common areas in close proximity to one another.[10]

This case arises in the context of UConn's response to the COVID-19 pandemic that has afflicted the world since early 2020. COVID-19 is an infectious disease caused by severe acute respiratory syndrome coronavirus 2.[11] The disease spreads through inhalation of respiratory

---

[4] Doc. #22-3 (¶ 2) (Declaration of Dylan Barkasy).

[5] Doc. #19 at 2 (¶¶ 4-5).

[6] *Id.* at 2 (¶¶ 4, 6).

[7] Doc. #27-1 at 2 (¶ 4) (Declaration of Eleanor Daugherty, UConn Dean of Students and Associate Vice President of Student Affairs).

[8] *Ibid*.

[9] *Ibid*.

[10] *Ibid*.

[11] *See* Ctrs. for Disease Control & Prevention (CDC): COVID-19, *Frequently Asked Questions*, https://perma.cc/P66D-HXGC; *see also* Doc. #27-2 at 2 (¶ 8) (Declaration of Lynn Sosa, Deputy State Epidemiologist for the Connecticut Department of Public Health).

droplets and aerosol particles containing the virus or other direct contact between the virus and a person's eyes, nose, or mouth.[12]

The physiological effects of COVID-19 infection range enormously. Some cases have no symptoms (called asymptomatic). Some cases are mild with symptoms akin to a common cold. Still other cases involve severe attacks on the respiratory system, resulting in hospitalization, intubation, and possibly death.[13] In a phenomenon sometimes referred to as "long COVID," some individuals experience new or recurring symptoms four or more weeks after infection, even after recovering from their initial symptoms.[14]

People of all ages can contract and transmit COVID-19.[15] Cases among individuals between the ages of 18 to 29 account for more than 20% of all COVID-19 cases, although COVID-19 generally affects children and younger adults less severely than middle aged or older adults.[16]

To date there have been more than 35 million confirmed cases of COVID-19 in the United States, resulting in the deaths of more than 600,000 people.[17] Connecticut has had more than 350,000 cases and more than 8,000 deaths, including the deaths of 10 people between the

---

[12] *See* CDC, *Scientific Brief: SARS-CoV-2 Transmission*, https://perma.cc/M3KZ-98BP.

[13] *See* CDC: COVID-19, *Symptoms of COVID-19*, https://perma.cc/5MLL-Q2L9; CDC: COVID-19, *People with Certain Medical Conditions*, https://perma.cc/FJX8-5D9R.

[14] CDC: COVID-19, *Post-COVID Conditions*, https://perma.cc/75HQ-Z8SV; *see also* Doc. #27-2 at 10 (¶ 45) (Sosa declaration).

[15] CDC: COVID Data Tracker – Demographic Trends of COVID-19 Cases and Deaths in the United States reported to CDC, https://perma.cc/Y9GN-RMJ8 (accessed on August 15, 2021); CDC Morbidity and Mortality Weekly Report (October 2020): Changing Age Distribution of the COVID-19 Pandemic — United States, May–August 2020, https://perma.cc/DNC4-4KLJ; Doc. #27-2 at 2 (¶ 9) (Sosa declaration).

[16] CDC: COVID Data Tracker – Demographic Trends of COVID-19 Cases and Deaths in the United States reported to CDC, https://perma.cc/Y9GN-RMJ8 (accessed on August 15, 2021); CDC: Risk for COVID-19 Infection, Hospitalization, and Death By Age Group,  https://perma.cc/6323-324H (accessed on August 15, 2021); Doc. #27-2 at 2-3 (¶¶ 11, 16) (Sosa declaration).

[17] CDC: COVID Data Tracker – Trends in Number of COVID-19 Cases and Deaths in the United States reported to CDC, https://perma.cc/F2SF-6LYU (accessed on August 15, 2021); Doc. #27-2 at 3 (¶ 15) (Sosa declaration).

ages of 20-29.[18] Though relatively few deaths have occurred among younger members of our community, they can still become infected and spread the virus to those who are yet more vulnerable.[19]

In early 2020, COVID-19 spread rapidly across the globe and within the United States.[20] As the pandemic intensified, UConn directed its students not to return to campus.[21] The University largely transitioned to online classes, operating at only 36% of its residential capacity for the following 2020-21 academic year.[22] For students and faculty on campus, UConn required masks, social distancing, and routine COVID-19 testing, as well as other measures to reduce the spread of the virus on UConn's campuses.[23]

At a national level, our country's major response to COVID-19 has been the expedited development and emergency deployment of vaccines. The U.S. Food and Drug Administration (FDA) has granted emergency use authorization for new medical technologies to address COVID-19.[24] The FDA granted emergency use authorization for three COVID-19 vaccines: two mRNA vaccines developed by Moderna and Pfizer-BioNTech, and a viral vector vaccine developed by Johnson & Johnson under the brand name Janssen.[25] The FDA granted an

---

[18] *See* Connecticut COVID-19 Response, https://perma.cc/3K7T-UJXG (accessed on August 15, 2021); CT Data: COVID-19 Tests, Cases, Hospitalizations, and Deaths (Statewide), https://perma.cc/HY25-X7DB (accessed on August 15, 2021); Doc. #27-2 at 3 (¶ 14) (Sosa declaration).

[19] CDC Morbidity and Mortality Weekly Report (October 2020): Changing Age Distribution of the COVID-19 Pandemic — United States, May–August 2020 at 1407, https://perma.cc/DNC4-4KLJ (finding that "[i]ncreased prevalence of SARS-CoV-2 infection among younger adults likely contributes to community transmission of COVID-19, including to persons at higher risk for severe illness, such as older adults"); Doc. #27-2 at 2 (¶ 11) (Sosa declaration).

[20] CDC: COVID Data Tracker – Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory, https://perma.cc/3N4Z-4ZQB (accessed on August 15, 2021).

[21] Doc. #27-1 at 3 (¶ 6) (Daugherty declaration).

[22] *Id*. at 3 (¶¶ 6-7).

[23] *Id*. at 3 (¶ 6).

[24] *See* 85 Fed. Reg. 18250, 18250-18251; *see also* 21 U.S.C. § 360bbb-3(c).

[25] *See* FDA: COVID-19 Vaccines, https://perma.cc/Z5Z2-DW8R. For the difference between traditional viral vector

emergency use authorization to Pfizer on December 11, 2020, to Moderna on December 18, 2020, and to Janssen on February 27, 2021.[26] Since their authorization, more than 355 million doses of COVID-19 vaccines have been administered, fully vaccinating almost 170 million individuals.[27]

Both nationally and in Connecticut, the number of COVID-19 cases, hospitalizations, and deaths are now significantly lower than they were in late 2020 and early 2021.[28] But case numbers and hospitalizations have been rising again in recent months.[29] The CDC attributes these recent increases to the outbreak of the so-called "Delta variant," which is especially contagious, apparently spreading even among vaccinated individuals.[30]

In anticipation of the 2021-22 academic year, the UConn Board of Trustees formulated a mandatory vaccination policy in hopes of returning to "near normal" residential living and in-person learning operations.[31] To inform its decision, UConn consulted with infectious disease specialists, medical providers, and guidance from the CDC and other respected medical

---

and the more recent mRNA vaccines, *see* CDC: Understanding Viral Vector COVID-19 Vaccines, https://perma.cc/PX5T-KJCN; CDC: Understanding mRNA COVID-19 Vaccines, https://perma.cc/FEE9-F56R.

[26] *See* FDA: Pfizer-BioNTech COVID-19 Vaccine EUA Letter of Authority June 25, 2021, https://perma.cc/QM5X-QJXE; FDA: Moderna COVID-19 Vaccine EUA Letter of Authorization July 7, 2021, https://perma.cc/WP9A-R3WE; FDA: Janssen COVID-19 Vaccine EUA Letter of Authorization June 10, 2021, https://perma.cc/WBR2-VVNY. *See Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926, *9–10 (N.D. Ind. 2021) (explaining rigorous clinical trials each vaccine went through prior to granting of emergency use authorization), *aff'd*, -- F.4th --, 2021 WL 3281209 (7th Cir. 2021).

[27] CDC: COVID Data Tracker – COVID-19 Vaccinations in the United States, https://perma.cc/FR33-BF25 (accessed August 15, 2021).

[28] CDC: COVID Data Tracker – Trends in Number of Cases and Deaths in the United States reported to CDC, by State/Territory, https://perma.cc/PJ6C-U5N5 (accessed August 15, 2021); CT Data: COVID-19 Daily Report, https://perma.cc/FV22-M7YX (updated on August 12, 2021).

[29] CDC: COVID Data Tracker – U.S. Covid-19 7-Day Case Rate per 100,000, by State/Territory (Map); https://perma.cc/ZA8G-AAHX (accessed August 15, 2021); Doc. #17 at 96-97, 102-05.

[30] *See* CDC: Delta Variant - What We Know About the Science; https://perma.cc/G2ZL-UZZF; CDC: COVID Data Tracker – Variant Proportions, https://perma.cc/8S72-L3AL (accessed August 15, 2021).

[31] Doc. #27-1 at 3-4 (¶ 8) (Daugherty declaration).

institutions.[32] In particular, UConn relied on the CDC's statements regarding the efficacy and safety of the available vaccines.[33]

In June 2021, UConn announced its vaccination policy, which states that "[a]ll UConn students are required to be fully vaccinated against COVID-19," and that they "are required to report vaccination compliance to the University."[34] The stated purpose of UConn's policy is to "promote the health and safety of the University community and to reduce the risk of transmission of COVID-19 among University students, consistent with federal, state and local efforts to minimize outbreaks of COVID-19."[35] The policy applies to "[a]ll UConn students at the Storrs and regional campuses who participate in any on-campus activities in person for any reason."[36]

According to the policy, "[f]ailure to comply with this policy may result in loss of privileges and/or sanctions."[37] The policy further states that "[t]his policy and any attendant procedures and/or rules may be amended as necessary based on factors such as the progress of the COVID-19 pandemic and guidance from governmental authorities."[38]

---

[32] *Ibid.*; Doc. #17 at 127-29; 211-13, 216, 225; *see* CDC: Considerations for Institutions of Higher Education (IHEs), https://perma.cc/VJG6-AK5N (encouraging IHEs to offer and promote vaccination).

[33] Doc. #27-1 at 4 (¶¶ 8-9).

[34] *Id.* at 11 (Daugherty declaration, Ex. A) (UConn Policies and Procedures – COVID-19 Immunization Record Requirement for Students).

[35] *Ibid.*

[36] *Ibid.*

[37] *Id.* at 12.

[38] *Ibid.*

The policy also states that "[e]xemptions from this policy will be permitted under certain circumstances."[39] A student may apply for a medical or a non-medical exemption by linking to and filling out an online form.[40]

The policy itself does not state the criteria that UConn will apply when considering medical or non-medical exemption requests. According to the defendants' submissions, however, a medical exemption request is evaluated by UConn's Student Health and Wellness center and must be accompanied by a signed statement indicating a specific medical contraindication from the student's medical provider.[41]

On the other hand, a non-medical exemption request is reviewed by Eleanor Daugherty, UConn's Dean of Students and Associate Vice President for Student Affairs. According to Dean Daugherty, she reviews each request for a non-medical exemption to determine (1) whether the applicant is enrolled as a student; (2) whether the student will be living on-campus in a residence hall; (3) whether the student "genuinely wants or needs an exemption" rather than mistakenly believing that one is necessary; and (4) "the potential impact on the health and safety of the student's campus cohort, such as his/her residence hall."[42]

The record reflects that as of July 22 and July 23, respectively, UConn received 55 requests for medical exemptions and 771 requests for non-medical exemptions.[43] Although the record does not show whether any of the medical exemption requests have been granted, it shows

---

[39] *Ibid*.

[40] *Ibid*.

[41] *Id*. at 5 (¶ 14) (Daugherty declaration).

[42] *Id*. at 5 (¶ 15). As Dean Daugherty's declaration explains, the scope of her review includes determining whether a student is mistaken in thinking that he or she needs to obtain an exemption. For example, an international student might mistakenly believe that he or she must request an exemption, not knowing that UConn offers the student the opportunity to be vaccinated upon arrival on campus. *Ibid*.

[43] *Id*. at 6 (¶¶ 17-18).

that Dean Daugherty has granted 504 of the 771 requests for non-medical exemptions.[44] She has not yet acted to grant or deny the remaining requests, which remain pending.[45]

Two of the three plaintiffs—DiSalvatore and Barkasy—applied for non-medical exemptions as allowed under the Policy. On June 15, 2021, DiSalvatore applied for an exemption for her son.[46] She wrote that she had "apprehension and fear" about the vaccination and that she sought "an exemption until more time has passed and there is more research supporting the need for it and refuting an[y] dangerous short- or long-term effects from getting it."[47] She further wrote that her son was "healthy and in a low-risk population."[48] Dean Daugherty granted the exemption on July 23, 2021, stating: "You have been granted a non-medical COVID-19 vaccination exemption."[49]

On July 3, 2021, Barkasy applied for an exemption for the 2021-22 school year. His request listed numerous "objections" to the vaccination requirement, principally including concerns that the vaccines had been approved for emergency use only and that there were aspects of Barkasy's medical history and family medical history that made him particularly susceptible to and concerned about the known and unknown side effects of the vaccines.[50] Dean Daugherty granted the exemption on July 23, 2021, stating: "You have been granted a non-medical COVID-19 vaccination exemption."[51]

---

[44] *Id*. (¶ 18).

[45] *Ibid.*

[46] *Id*. at 15 (Daugherty declaration, Ex. B).

[47] *Ibid.*

[48] *Ibid.*

[49] *Id*. at 16.

[50] *Id*. at 19 (Daugherty declaration, Ex. C).

[51] *Id*. at 20.

The third plaintiff—Nicole Wade—has not applied for an exemption. She attests that "I did not apply for any exemptions, as I do not qualify for a medical exemption and there was a lack of any specific clarity as to the policy surrounding nonmedical exemption approvals and what any approval would mean not only for the Fall 2021 semester, but future semesters at UConn."[52]

The plaintiffs filed this lawsuit on July 6, 2021, and their amended complaint alleges constitutional claims for violations of procedural and substantive due process.[53] In essence, the plaintiffs claim that the vaccination requirement unconstitutionally requires them to accept unwanted medical treatment as a condition of attending UConn, and that the lack of published criteria for the granting of non-medical exemptions deprives them of a liberty interest without fair procedures that the Constitution's due process clause requires.

In light of the imminent start of the school year at the end of this month, the plaintiffs have moved for a preliminary injunction.[54] The defendants in turn have cross-moved to dismiss the complaint on the ground that the Board of Trustees is immune from a federal court action under the Eleventh Amendment and on the ground that the plaintiffs lack standing because they have been granted exemptions or have failed to apply for an exemption.[55] I heard oral argument on August 12, 2021, and this ruling now follows.[56]

---

[52] Doc. #22-1 (Wade declaration).

[53] The amended complaint also alleges counts for "lack of informed consent" and for "violations of 42 U.S.C. § 1983," all of which I understand to be subsumed within the plaintiffs' constitutional due process claims.

[54] Docs. #2, #21.

[55] Doc. #16. The defendants have also separately moved to preclude certain expert evidence offered by the plaintiffs. Docs. #24, #26. The disputed evidence goes to the substantive merits of the plaintiffs' claims, and it is not necessary for me to resolve the merits in light of my ruling dismissing this action for lack of jurisdiction.

[56] The parties elected not to present any live witness testimony at the hearing and have consented to my ruling on the basis of their documentary submissions. In addressing the defendants' motion to dismiss for lack of jurisdiction, I may also consider materials outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**DISCUSSION**

Because the defendants' motion to dismiss disputes the Court's jurisdiction over this action, I will first address this motion before any consideration of the merits of plaintiffs' motion for preliminary injunctive relief. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).[57]

### *Sovereign Immunity*

The defendants assert that they have sovereign immunity from federal court jurisdiction under the Eleventh Amendment to the Constitution. It is well established that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by private citizens against the States, state government entities, and state government officials in their official capacities. *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–103 (1984); *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021).

The Eleventh Amendment forecloses the plaintiffs' claims against the UConn Board of Trustees because the Board is an instrumentality of the state government of Connecticut. "The courts have consistently held that Connecticut state universities and their boards of trustees are entitled to claim immunity under the Eleventh Amendment." *Sanchez v. Univ. of Connecticut Health Care*, 292 F. Supp. 2d 385, 392 (D. Conn. 2003); *see also Banerjee v. Roberts*, 641 F. Supp. 1093, 1098 (D. Conn. 1986) (Cabranes, J.) (determining that UConn and its board of

---

[57] For purposes of readability, my quotations from court decisions in this ruling omit internal citations, quotation marks, and bracketing unless otherwise noted.

trustees are entitled to immunity under the Eleventh Amendment). In light of this rule and in light of the plaintiffs' concession on this point at oral argument, I will dismiss the UConn Board of Trustees as a defendant in this action.

As to the remaining defendant—President Agwunobi—he is also entitled to Eleventh Amendment immunity except to the extent that the plaintiffs seek injunctive relief against him in his official capacity to prevent an ongoing violation of federal law. *See In re Deposit Ins. Agency*, 482 F.3d 612, 617–18 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This limited exception to the Eleventh Amendment rests on "the premise … that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). But to the extent that the plaintiffs base their claims on alleged violations of state law rather than federal law, "sovereign immunity prohibits federal courts from entering injunctions against state officials on the basis of *state* law, notwithstanding the *Ex parte Young* exception to sovereign immunity with respect to violations of *federal* law." *Vega v. Semple*, 963 F.3d 259, 283 (2d Cir. 2020).[58] Accordingly, I will dismiss all claims against President Agwunobi except to the extent that the plaintiffs seek injunctive relief against him for an ongoing violation of federal law.

### *Standing and Mootness*

The defendants argue that the plaintiffs lack standing to maintain any claim against President Agwunobi for an ongoing violation of federal law. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2,

---

[58] For example, the plaintiffs devote a substantial part of their briefing to arguing that the Board of Trustees issued UConn's vaccination policy without action by the Governor or state legislature and in excess of the Board's statutory authority under state law. *See* Doc. #3 at 14-16.

cl. 1. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014). An injury-in-fact must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 158.

As the Supreme Court has recently observed, "[f]ederal courts do not possess a roving commission to publicly opine on every legal question," and therefore they "do not adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by a court ensures that federal courts decide only the rights of individuals, and that federal courts exercise their proper function in a limited and separated government." *Ibid.*

The doctrine of mootness establishes a related limit on a federal court's jurisdiction. "If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020). In contrast to the burden that falls on a plaintiff to prove standing, it is the defendant who bears the burden to prove that a change of circumstances since the filing of a court action has rendered a case moot. *See Mhany Management, Inc. v. City of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).

The defendants argue that the two plaintiffs who have received exemptions from the policy—DiSalvatore and Barkasy—do not have standing. The record, however, shows that on the date that this lawsuit was filed, DiSalvatore and Barkasy had filed for exemptions but not yet

13

been granted exemptions. Because "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008), the more germane question is whether DiSalvatore and Barkasy's claims became moot when Dean Daugherty granted their requests for exemptions on July 23, 2021, some two and a half weeks after the filing of this lawsuit on July 6, 2021.

The answer to that question is yes. In light of the granting of their exemption requests, DiSalvatore and Barkasy have no continuing real or expected imminent injury from UConn's vaccination requirement. In such circumstances, where a plaintiff seeks to challenge a governmental requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claim. *See, e.g.*, *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) (plaintiffs who were granted firearms licenses lacked standing to challenge New York's requirements of good moral character and no-good-cause-for-denial to obtain a firearm license), *cert. denied sub nom. Libertarian Party v. Cuomo*, 2021 WL 2519117 (U.S. June 21, 2021).[59]

To be sure, it is possible in light of the ever-evolving pandemic that UConn might one day decide to revoke the exemptions granted to DiSalvatore and Barkasy. As noted above,

---

[59] I note that the amended complaint solely challenges UConn's vaccination requirement and does not allege injury from UConn's requirements for masking or other protective measures. The amended complaint alleges that "the defendants enacted a policy mandating that all University of Connecticut students be vaccinated against COVID-19." Doc. #19 at 3 (¶ 10). The motion for preliminary injunction alleges harm that stems solely from the vaccination requirement: "The harm to plaintiffs here is clear: they will be forced to either take a vaccine that they neither want to, nor under federal and state law [are] mandated to take, or they will be forced to miss out on their education, which could include financial losses." Doc. #3 at 21. Rather than challenging masking and other protective requirements, the plaintiffs argue that the existence of these alternatives is grounds to conclude that UConn does not have a proper basis to require vaccinations. *Id.* at 18 (arguing that UConn's "policies for exemption," mandating that exempt individuals "use specific precautions, such as mask wearing, physical distancing and/or potential quarantine" are more "narrowly tailored" means for UConn to protect its students, and that "there is no evidence to suggest that the effectiveness of those mitigation measures is any less after the vaccines have been put into the marketplace, and indeed may be more effective if the vaccines are as effective as we are being told").

UConn's vaccination policy states in general terms that it "may be amended as necessary based on factors such as the progress of the COVID-19 pandemic and guidance from governmental authorities."[60] But there is nothing before me to suggest that UConn is poised to revoke the exemptions anytime soon. A speculative possibility of future revocation of an exemption is not enough to defeat mootness. *See Libertarian Party*, 970 F.3d at 122 (noting that the plaintiffs' "fear[s] their licenses would be revoked were speculative, such apprehensions being insufficiently concrete to constitute injury-in-fact"); *see also Connecticut Citizens Def. League, Inc. v. Lamont*, -- F.4th --, 2021 WL 3177276, at *6 (2d Cir. 2021) (challenge to pandemic suspension of fingerprinting for firearms permits was moot in light of evidence showing resumption of fingerprinting and only a speculative possibility that the suspension of fingerprinting would be reimposed).

The plaintiffs misplace their reliance on the Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). In that case, the Supreme Court declined to find moot a challenge to a COVID-19 occupancy restriction, despite the fact that the Governor had partially lifted the restrictions for certain houses of worship, because the record showed that "[t]he Governor regularly changes the classification of particular areas without prior notice." *Id.* at 68. There is no such evidence in this case that UConn has altered or revoked exemptions once granted. Accordingly, because DiSalvatore and Barkasy have been granted exemptions from UConn's vaccination requirement, I will dismiss their challenges to the requirement as moot.

As to the remaining plaintiff Wade, the defendants argue that she lacks standing because she has not applied for an exemption. I agree. "As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy."

---

[60] Doc. #27-1 at 12.

*Libertarian Party*, 970 F.3d at 121. The Second Circuit has repeatedly applied this principle to conclude that a plaintiff who fails to submit to the procedural requirements of a law or policy that offers an exemption or other relief from its mandate does not have standing to challenge the restrictions imposed by the law or policy.

Thus, for example, in *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997), a prisoner brought a free-exercise challenge against prison officials who refused to allow him to wear traditional religious garb to his father's funeral. The refusal was based on a prison policy that required prisoners to identify, or "register," their religion in prison records, and that barred prisoners from wearing religious garb for religions for which they had not registered. *See id.* at 1093–94. The Second Circuit concluded that the prisoner had no standing to complain about the refusal to allow him to wear religious garb identified with a particular sect because he had not registered with the prison as a member of that sect. The prisoner could not show that the registration policy was responsible for his injury when that injury resulted "from his own decision not to follow the simple procedure of registering his religion." *Id*. at 1095.

Similarly, in *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012), a plaintiff raised a constitutional challenge to New York's firearm licensing scheme. But "because Decastro failed to apply for a gun license in New York, he lack[ed] standing to challenge the licensing laws of the state." *Id.* at 164. To the same effect, the Second Circuit in *Libertarian Party* more recently affirmed the dismissal for lack of standing of the claims of three plaintiffs who sought to challenge New York's firearms licensing requirements but who did not allege that they had applied for a license. *See* 970 F.3d at 122.

The reasoning from these cases applies equally here. Wade argues that she is injured by the policy's requirement that she show proof of vaccination, but she has failed to apply for an

16

exemption as the policy expressly allows her to do. *See also Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 821 (7th Cir. 2014) (plaintiffs had no standing to challenge tax law provision because they failed to apply for the tax law exemption in question).

It is true that a plaintiff need not seek an exemption from a policy if to do so would be futile. *See Libertarian Party*, 970 F.3d at 121–22. But there is no basis to suggest it would be futile for Wade to seek an exemption. Dean Daugherty has granted the large majority of exemption requests that she has received—504 of 771 applications. *See Decastro*, 682 F.3d at 164 (not futile for plaintiff to apply for firearms license where record showed that "roughly 2/3 to 3/4 of handgun license applications during the period in question were granted"). Indeed, Wade's two co-plaintiffs—DiSalvatore and Barkasy—have successfully applied for exemptions based on requests that expressed the same concerns about the intrusiveness and possible side-effects of the vaccines that prompted the plaintiffs to file this lawsuit in the first place.

There is good reason to believe that if Wade were to seek an exemption based on similar concerns that she would receive one. But if UConn denied or unduly delayed in acting on her request, then Wade would likely have standing. *Cf. Klaassen*, 2021 WL 3073926, at *14 (student who did not qualify for an exemption had standing to seek injunctive relief against university vaccination requirement).

Rather than arguing that it would be futile to seek an exemption, Wade insists that she need not seek an exemption because the criteria for granting an exemption are unconstitutionally vague. But the Second Circuit has ruled that futility is the "only" exception to the "threshold requirement" that "a plaintiff must submit to the challenged policy" in order to have standing to challenge the policy. *Jackson-Bey*, 115 F.3d at 1096. Moreover, the Second Circuit's decision in *Libertarian Party* implicitly precludes any claim that a plaintiff need not submit to a policy if her

complaint is that the policy is too vague. The Second Circuit ruled that three of the plaintiffs who failed to apply for a firearms license lacked standing, *see* 970 F.3d at 122, even though the plaintiffs alleged that the criteria for granting a firearms license were too vague to satisfy the requirements of the Due Process Clause, *see id.* at 125–27.[61]

Accordingly, there is no merit to Wade's argument that she need not submit at all to UConn's policy because she thinks it is too vague. Because Wade has failed to apply for an exemption as the policy allows, and because she has not shown that it would be futile to do so, she lacks standing to challenge UConn's vaccination policy.

## Conclusion

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss for lack of federal jurisdiction. The Court DENIES as moot the remaining motions for preliminary injunctive relief and to preclude expert testimony. The Clerk of Court shall close this case subject to re-opening in the event that the plaintiffs file an amended complaint alleging facts that plausibly establish the Court's jurisdiction over their claims.

It is so ordered.

Dated at New Haven this 16th day of August 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[61] Wade does not seek relief under the First Amendment—the only area of law in which the Supreme Court has indicated that a plaintiff may bring a facial challenge "without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755–56 (1988).